**John Louis MERTZ, Plaintiff,**

v.

**Warren PINTO, Former Superintendent of the New Jersey State Prison Farm et al., Defendants.**

**Civ. No. 1012–70.**

United States District Court,
D. New Jersey.

April 5, 1971.

John Louis Mertz, pro se.

George F. Kugler, Jr., Atty. Gen. of New Jersey, by Joseph T. Maloney, Deputy Atty. Gen., for defendants.

OPINION

WHIPPLE, District Judge:

This matter is before the Court in order that I may rule on plaintiff's motion for summary judgment and defendants' motion to dismiss, or in the alternative, for summary judgment. Briefs have been submitted and oral argument was heard.

John Louis Mertz is presently an inmate at the New Jersey State Prison Farm at Rahway (Rahway). Warren Pinto is the former superintendent of the Rahway prison. Ernest Waldmeyer is the Classification Officer at Rahway. Charles Witt is the Food Supervisor at Rahway and in this capacity he has charge of the kitchen. Mertz seeks money damages from these defendants

because they allegedly deprived him of his constitutional rights in that they forced him to work in a dangerous place, causing him injury which in turn led to assorted disciplinary actions, all of which resulted in denying Mertz an opportunity to earn good time credits. By accumulating good time credits a prisoner can reduce his prison term by applying them against his sentence. Jurisdiction is rested upon 28 U.S.C. § 1343 and the relief is sought under 42 U.S.C. § 1983. Plaintiff seeks damages of $750,000 and injunctive relief ordering the defendants to afford him the same rights and privileges as other prisoners.

The facts leading up to these charges are most unusual, and while the parties are not in agreement I will set out those facts which are established by the record before me. Mertz was sentenced in 1966 to a term of 9–12 years for armed robbery. In 1967 he received a term of 5–7 years for another armed robbery, but that term was ordered to be served concurrently with the earlier sentence.[1] He was assigned to Rahway in 1967 with the medical restriction that he was not to work "around machines or high places." His first assignment was in the kitchen where he worked in the vegetable room. On September 18, 1967 the medical reports indicate Mertz got his hand caught in a meat grinder with a resulting permanent injury to his "pinky". Mertz claims that he was compelled against his will to assist another inmate in the operation of the meat grinder which was located on a high bench. It is alleged that defendant Witt, in spite of Mertz's protestations, ordered him to stand on the bench, thus causing Mertz to have a dizzy spell and fall literally into the grinder. Defendants contend Mertz actually slipped and fell while carrying a tray of meat and further that the grinder wasn't even operating.[2] Since the accident plaintiff

has had several minor operations on his finger and he is limited to "light work where the right hand is not involved." Plaintiff alleges that ever since the accident he has been the object of job discrimination and that he was arbitrarily assigned as a porter, a position which does not afford him an opportunity to earn as much good time credit as he was earning prior to the accident.

Defendants' reply to these charges by way of the affidavit of Waldmeyer, the Classification Officer, who states that Mertz received competent medical treatment for his injuries, that he received lost work time credits and lost wages for the time he was idle, and that he is not considered suitable for assignment to a minimum security work assignment because of his attitude and the number of disciplinary infractions he has committed since the accident. These infractions include such offenses as "smoking in the hospital", "possession of fermented fruit juice", "loud talking after the quiet bell" and other "non-violent" offenses.

It is well established that a prisoner who can successfully prove that his constitutional rights have been violated by prison officials may bring an action under 42 U.S.C. § 1983 for money damages without first exhausting his state remedies. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) relying on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, the scope of a prisoner's constitutional rights is not nearly so well established. The considerations underlying our penal system require that some of the protected activities of citizens at large be denied to state prisoners. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948). This Court will not and should not assume the task of overseeing the day-to-

---

1. Mertz, who is well known to this Court is presently conducting his 10th or 11th appellate action in order to upset these sentences.

2. The New Jersey Legislature awarded Mertz $375. as compensation for his injury, but he has refused to accept it since he feels the amount is insufficient.

day operations of the state prison system. The traditional position that discipline reasonably maintained in the state prison is not under the supervisory direction of the Federal Courts [3] has been adopted by this Circuit. Gurczynski v. Yeager, 339 F.2d 884 (3d Cir. 1964). However, in recent years increased attention has been focused on the "due process" aspect of prison officials' daily conduct. Many courts have seen fit to examine all phases of prison discipline and order, especially when the alleged misconduct results in substantial punishment or arbitrary withholding of good time credit.[4]

■■ It is this Court's opinion that when a prisoner is exposed to substantial deprivations either by way of physical confinement or significant loss of good time credits then he must be accorded some procedural protections. These protections will of necessity vary from case to case but no matter what form they take they must be sufficient to apprise the prisoner of the accusation and the evidence against him, and give him a reasonable opportunity to defend or explain his actions. See, Sostre v. Rockefeller, supra, 312 F.Supp., at 872; Morris v. Travisono, 310 F.Supp. 857 (D.R.I.1970). However, I have carefully examined the facts before me and I cannot conclude that these charges, even if true, allege substantial deprivations which would call into play the constitutional protections of "due process of law", the absence of which would entitle the plaintiff to some type of relief. Questions of prisoner classification are peculiar to the internal management of the state prisons and absent a showing of clear discrimination in a constitutionally protected area, i. e., race, religion, creed, etc. I do not see how a federal judge could substitute himself for the prison official charged with the responsibility of running the day-to-day affairs of the prison.

Mertz's charge that defendant Witt violated his constitutional rights by ordering him to work on a high bench must also be dismissed for I find such a charge, even if true, is a far cry from the "barbaric", "inhuman" or "cruel" acts which cross the imaginary line from permitted to prohibited punishment. See, Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Burns v. Swenson, 430 F.2d 771 (8th Cir. (1970); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Ford v. Board of Managers of the New Jersey State Prison, 407 F.2d 937 (3d Cir. 1969); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Knuckles v. Prasse, 302 F. Supp. 1036 (E.D.Pa.1969); United States ex rel. Wakeley v. Pennsylvania, 247 F.Supp. 7 (E.D.Pa.1965).

In accordance with the reasons stated above, I find that plaintiff's complaint does not state a cause of action upon which relief can be granted. Therefore, defendants' motion for dismissal is granted and plaintiff's motion for summary judgment is denied.

---

3. Kelly v. Dowd, 140 F.2d 81 (7th Cir. 1944).

4. The very recent opinion by Judge Kaufman in Sostre v. McGinnis et al., 442 F.2d 178 (2d Cir. 1971) affirming in part and reversing in part Judge Motley's opinion at 312 F.Supp. 863 (S.D. N.Y.1970) provides an excellent reference to all the pertinent cases in this area.