**Kenneth and Marcia HARK, individually and as parents of Lester Hark**

v.

**The SCHOOL DISTRICT OF PHILADELPHIA**

**and**

**Michael P. Marcase, Superintendent**

**and**

**Commonwealth of Pennsylvania, Department of Education**

**and**

**Robert Scanlon.**

Civ. A. No. 80–951.

United States District Court, E. D. Pennsylvania.

Dec. 22, 1980.

William L. Meritz, Bensalem, Pa., for plaintiff.

Ernest N. Helling, Nancy K. Matlowski, Allen C. Warshaw and Harvey Bartle III, Harrisburg, Pa., for defendants Robert Scanlon and Comm. of Pa. Dep't. of Education.

Robert T. Lear, Philadelphia, for defendants, School Dist. of Philadelphia, and Michael P. Marcase.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Kenneth and Marcia Hark brought this action on their own behalf and that of their son, Lester, to obtain reimbursement of funds they expended on the special education Lester requires because of his emotional and consequent learning disabilities. By separate order, the defendants' motions to dismiss are denied in part and granted in part.

### I.

The Harks base their case on several federal statutes: 42 U.S.C. §§ 1981 and 1983 (Civil Rights Act); 20 U.S.C. § 1401 et seq. (Education of the Handicapped Act); and 29 U.S.C. § 794 (Rehabilitation Act). The last of these does not in terms provide for a private cause of action; whether a private cause of action is implied is a question now before the Supreme Court.[1] Here, the

1. *University of Texas v. Camenisch*, 616 F.2d 127, *cert. granted*, —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980). Cases sustaining the implied private cause of action include *Cruz v. Collazo*, 84 F.R.D. 307 (D.P.R.1979); *Boxall v. Sequoia Union High School District*, 464 F. Supp. 1104, 1109 (N.D.Cal.1979); *Stubbs v. Kline*, 463 F.Supp. 110, 115 (W.D.Pa.1978).

Harks claim that the defendants—including the School District of Philadelphia, and its Superintendent Michael Marcase; and the Commonwealth of Pennsylvania Department of Education, and its Secretary Robert Scanlon—failed to provide a free and appropriate education for Lester Hark. Such an education in Pennsylvania is guaranteed by the Education of the Handicapped Act, 20 U.S.C. § 1401 *et seq.*, because the Commonwealth receives federal funds, pursuant to the Education of the Handicapped Act, to provide such an education to children handicapped within the meaning of the Act. That Act also requires a due process hearing system to enable parents to intervene in and contribute to the state's decision-making as it relates to a child's placement, evaluation, and the "provision of a free appropriate public education." 20 U.S.C. § 1415. The Harks petitioned the Philadelphia School District for the special placement of their son in 1977, shortly after he had been diagnosed as emotionally disturbed; he was then, plaintiffs allege, an "exceptional" or handicapped child within the meaning of 22 Pa.Code § 13.1 *et seq.*, requiring a special educational program. 22 Pa.Code. § 13.11.[2]

The Harks activated the due process hearing system, but the responsible officials of the School District reached no decision in time to place Lester before the beginning of the 1977–78 school year. The Harks found what they believed to be an appropriate school in Freeville, New York, and have paid the tuition since.

The due process hearing procedure was completed in 1978. See 22 Pa.Code § 13.31. This apparently resulted in a determination that Lester's placement in the Freeville school was appropriate, at least as of the time he was initially placed. The matter of reimbursement was raised by the plaintiffs at the hearings, but never determined. Plaintiffs suggest this was because the hearing officer had no authority to determine the issue, and no defendant contests this. *See* 22 Pa.Code, §§ 13.31, 341.18.[3]

Believing they had received a favorable ruling from the hearing officer, the Harks did not appeal to either the Secretary of Education, 22 Pa.Code § 13.32(24), or a federal court. 20 U.S.C. §§ 1415(c), (e). But their attempts to secure reimbursement have been unsuccessful. Indeed, the Harks allege that there simply is no reimbursement procedure in Pennsylvania; and the record before me does not suggest otherwise. They eventually brought suit here, as parties "aggrieved by the findings and decisions made" in the state administrative proceedings. 20 U.S.C. § 1415(e)(2).

## II.

### A. *The Statute of Limitations.*

■ Defendants note that this suit was brought approximately 210 days after the final decision by the hearing officer. As there is no federal statute of limitations for this action, defendants suggest that, as with cases under the Civil Rights Act, 42 U.S.C.

*Stubbs v. Kline*, 463 F.Supp. 110, 115 (W.D.Pa. 1978).

2. These regulations are among those implementing the state plans required by the Education of the Handicapped Act at 20 U.S.C. §§ 1412 and 1413. See especially § 1412(2)(B), and the definition of a handicapped child at § 1401(1).

3. If a hearing is requested, the hearing shall be held to determine the specific kinds of programs and services appropriate for the person, based on the evaluation conducted in accordance with § 341.13 of this title (relating to evaluation) and any subsequent reevaluation that may have been conducted. The hearing officer shall, after the hearing, issue an opinion and order defining the assign-

ment, program, and services in such specificity as the hearing officer deems necessary. An Individualized Education Program document shall then be developed jointly, in conformity with the decision of the hearing officer, by the parents, school personnel, and, where appropriate, the person, in accordance with § 341.16 of this title (relating to Individualized Education Program conference) in order to supply any component of the Individualized Educational Program not noted, ruled upon, or recommended by the hearing officer in the decision of the hearing officer. The conference shall be scheduled within ten days after the decision has been rendered. 22 Pa.Code § 341.18(b).

§§ 1981, 1983, the most closely comparable state statute should be applied. In Pennsylvania, "appeals" must be taken within thirty days of administrative agency decisions appealed from, 42 Pa.C.S.A. § 5571(b) (1980 Pamphlet); that requirement, defendants argue, bars this litigation.

A necessary, if not sufficient, predicate for defendants' argument is that this federal action is substantially equivalent to one the Harks might have brought in a Pennsylvania court as an appeal from the decision of the hearing officer, or as an appeal from a final decision of the Secretary of Education, had the matter been brought to the Secretary. But the Harks assign no error in the rulings in the state administrative proceedings. They do not "appeal" from the findings and recommendations of the hearing officer.[4] Thus, the time limitations of section 5571(b) are not applicable here.

### B. Res Judicata and the exhaustion of administrative remedies.

Defendants suggest that the reimbursement issue should have been litigated in the administrative proceedings, but was not; under Pennsylvania law, they conclude, this is enough for the imposition of the res judicata bar. See, e. g., County of Lancaster v. Philadelphia Electric Co., 386 F.Supp. 934, 937 (E.D.Pa.1975); Bearoff v. Bearoff Bros., Inc., 458 Pa. 494, 327 A.2d 72, 74 (1974). Certainly, the claim for reimbursement was made, but it is in this case uncontradicted that the claim could not have been adjudicated. Hence, the res cannot possibly be judicata.

Defendants' corollary theory that the plaintiffs failed to exhaust their administrative remedies is not demonstrated by the absence of a reimbursement order, or plaintiffs' failure to appeal to the Secretary of Education finding. The allegation is that no administrative remedy was ever available; under such circumstances, the exhaustion doctrine is clearly irrelevant. Armstrong v. Kline, 476 F.Supp. 583, 602 (E.D.Pa.1979); Doe v. Koger, 480 F.Supp. 225, 228 (N.D.Ind.1979); Sherry v. New York State Education Department, 479 F.Supp. 1328 (W.D.N.Y.1979).

The defendants have pointed to Krawitz v. Department of Education, 408 A.2d 1202, 48 Pa.Cmwlth. 155 (1979), as an example of how the reimbursement issue can be settled by the administrative procedure. There, the appellants went to state court to reverse the hearing officer's findings that no special program was required. The Commonwealth Court ordered the special program, together with reimbursement for the appellants' expenses on behalf of their child's special education. But here, the Harks maintain, there was nothing to appeal, and consequently no reason to go to the Commonwealth Court. Krawitz does not suggest that reimbursement could have been settled in the due process hearing setting; it suggests the opposite: that in this state, one must resort to the courts to be reimbursed.[5]

### C. The Nature of Jurisdiction under 20 U.S.C. § 1415.

It is the supposition of defendants, which informs much of their argument in favor of dismissing this action, that 20 U.S.C. §§ 1415(e)(2) and (4) are only a method for appealing the rulings of a state administrative agency. See, e. g., Stubbs v. Kline, 463 F.Supp. 110, 114 (W.D.Pa.1978). Certainly, section 1415(e)(1) directs that appeals may be made from such rulings. But it does not follow that litigants may bring a federal action only when assigning error to findings of fact or conclusions of law. Section 1415(e)(2) permits federal litigation by those "aggrieved by the findings and decision" in the state procedure. One may be as aggrieved by a correct interpretation of extant law or administrative authority as

---

4. See infra, § IIC of this memorandum.

5. While one might suppose that the Education of the Handicapped Act contemplated this sort of administrative decision, the Act generally does not define the duties of the state hearing officer. See generally, Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975, 92 Harv.L.Rev. 1103, 1108 n.37 (1978).

by unsupported findings of fact or erroneous legal analysis. It would be anomalous if, under a federal statute which contemplated recourse to the federal courts to examine state administrative decisions alleged not to fulfill the promise of a federally funded program, a deficient state administrative procedure could preclude review, especially when the gravamen of the complaint is precisely that deficiency. Even a legal mind, adept as it may be at ignoring the inexorable consequences of its premises, would be hard to put to persuade itself (let alone others) that the Act's guarantee of a free appropriate education would be served by such reasoning.

So it is that I conclude that section 1415(e)(2) not only provides for a kind of appellate jurisdiction, but also for review whenever the plaintiff, having exhausted all applicable administrative remedies, remains "aggrieved."

### D. Immunity under the Eleventh Amendment.

■ The Commonwealth of Pennsylvania's Department of Education has asked that it be dismissed as a party defendant on the basis of its Eleventh Amendment immunity. This motion must be granted unless there is some clear abrogation of that immunity by Congress. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *Savage v. Commonwealth of Pennsylvania, et al.*, 475 F.Supp. 524 (E.D.Pa.1979). The Civil Rights Act apparently does not work such an abrogation, *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979), nor have plaintiffs proffered anything suggesting that the other statutes relied on do. The fact that compensatory damages may be available to plaintiffs under 20 U.S.C. § 1415, *see Boxall v. Sequoia Union High School District*, 464 F.Supp. 1104, 1112 (N.D.Cal.1979), does not argue in favor of abrogating Eleventh Amendment immunity, but rather the opposite. *Stubbs v.*

*Kline*, 463 F.Supp. 110, 114–15 (W.D.Pa. 1978). Hence, the Department of Education's motion will be granted.

■ Robert Scanlon, the Secretary of the Department of Education, has also asked that he be dismissed on the same grounds. The recovery here, if any, will not in fact be against Secretary Scanlon, but his agency; the Secretary is but a nominal defendant here, and nothing in the amended complaint supports an inference that the Secretary is being sued in his individual capacity.[6] Hence, I will grant his motion. *Cf. Stubbs, supra* at 114–15; *West v. Keve*, 571 F.2d 158, 163 (3d Cir. 1978).

### E. The Specificity of Pleading.

■ Superintendent Michael Marcase asks that he be dismissed from the civil rights portion of the complaint because his alleged behavior is not pleaded with sufficient specificity. *See generally, Rotolo v. Borough of Charleroi*, 532 F.2d 920, 923 (3d Cir. 1976); *United States ex rel. Smith v. Robinson*, 495 F.Supp. 696, 698–99 (E.D.Pa. 1980). The allegations currently are little more than a recital of his official position at the time of Lester Hark's placement problems, together with an allegation that the Superintendent did nothing to satisfy the plaintiffs' claims. There is no suggestion that the Superintendent either knew of Lester Hark's predicament, or, knowing, had it within his power to ameliorate it.

■ The plaintiffs have replied to the Superintendent's motion by suggesting that discovery is required to determine the Superintendent's role. The suggestion that discovery will enable plaintiffs to draft their complaint properly is insufficient to meet the applicable standards of specificity in this Circuit, *cf. Krier v. Amodio*, 441 F.Supp. 181, 183 (E.D.Pa.1977), or, indeed, the logical prohibition against circular reasoning. Thus, the Superintendent's motion to be dismissed as a party defendant in the §§ 1981 and 1983 action will be granted.

---

**6.** Nor do plaintiffs ask for the sort of injunctive relief contemplated by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and its progeny, which would permit retaining Secretary Scanlon in his official capacity.